UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Clarence S. Gregory,   #227394, | ) C/A No. 3:11-1692-TLW-JRM |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Heath McAlvin Stewart, III; Riley Pope; LeRoy Free DeLaney; Nikole H. Boland, Attorneys & Counselors at Law; sued in their individual and professional employment; And Jonathan E. Ozmint and Judge John Ernest Kinard, Jr. of Whom Both Is Sued In their Individual and Official Capacities, Of Whom All is, | ) ) ) ) ) ) ) ) ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

The pro se Plaintiff, Clarence S. Gregory, is a prisoner at the Broad River Correctional Institution of the South Carolina Department of Corrections' ("SCDC"). Plaintiff brings this 42 U.S.C. § 1983 action against Defendants, seeking compensatory and punitive damages. Plaintiff filed his original Complaint (ECF No. 1) on July 13, 2011, along with a Motion to Appoint Counsel (ECF No. 2) and a Motion for Leave to Proceed *in forma pauperis* (ECF No. 3). Plaintiff's original Complaint named Heath McAlvin Stewart, III, Riley Pope, LeRoy Free DeLaney, and Nikole H. Boland as Defendants. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02 DSC, the original Complaint was referred to the undersigned United States Magistrate Judge for pre-service review and, on August 8, 2011, an Order denying Plaintiff's Motion to Appoint Counsel, granting Plaintiff's Motion for Leave to Proceed *in forma pauperis*, and directing the Office of the Clerk of Court not to authorize service of the Complaint was issued (ECF No. 7). A Report and Recommendation (ECF No. 8), also dated and filed on August 8, 2011, was issued in

1

which the undersigned recommended summary dismissal of Plaintiff's original Complaint, without prejudice and without issuance and service of process. On September 7, 2011, rather than filing Objections to the Report and Recommendation, Plaintiff filed his Motion for Leave to Amend his Complaint (ECF No. 14) and a proposed Amended Complaint (ECF No. 14-1), seeking to add as Defendants "Jonathan E. Ozmint ("Ozmint") and Judge John Ernest Kinard, Jr. ("Judge Kinard"). On September 8, 2011, United States District Judge Terry L. Wooten issued an Order (ECF No. 15) referring Plaintiff's Motion to Amend his Complaint to the undersigned for review. On October 4, 2011, Judge Wooten issued an Order (ECF No. 19) declining to accept the Report and Recommendation issued on August 8, 2011 (ECF No. 8) and remanding the case back to the undersigned for further consideration in light of Plaintiff's Motion for Leave to Amend his Complaint (ECF No. 14).

By Order issued simultaneously with the present Report and Recommendation, the undersigned has determined that Plaintiff's Motion for Leave to Amend Complaint (ECF No. 14) is not required in this case, under Federal Rule of Civil Procedure 15(a), because the original Complaint has not been served on Defendants, and the Motion has been mooted. Plaintiff's proposed Amended Complaint (ECF No. 14-1) has been ordered to be designated as the Amended Complaint in this case, and the Clerk of Court has been directed to docket it as such. The Amended Complaint, which is now the operative complaint in this case, is presently before the undersigned for review, pursuant to the following: 28 U.S.C. §636(b)(1); Local Civil Rule 73.02(B)(2)(b), and (e) DSC; 28 U.S.C. § 1915(e)(2)(B); and *In Re Prison Litigation Reform Act*, 105 F.3d 1131, 1134 (6th Cir. 1997) (pleadings by non-prisoners should also be screened). Having carefully reviewed

Plaintiff's Amended Complaint and the applicable law, the undersigned recommends that it be summarily dismissed without prejudice and without issuance and service of process.

## *PRO SE* AND *IN FORMA PAUPERIS* REVIEW

Under established local procedure in this judicial district, a careful review has been made of the *pro se* pleadings pursuant to the provisions of 28 U.S.C. § 1915. The review has been conducted in light of the following precedents: *Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319 (1989); *Estelle v. Gamble*, 429 U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64 F.3d 951 (4th Cir. 1995); *Todd v. Baskerville*, 712 F.2d 70 (4th Cir. 1983).

The Amended Complaint was filed pursuant to 28 U.S.C. § 1915, which permits an indigent litigant to commence an action in federal court without paying the administrative costs of proceeding with the lawsuit. To protect against possible abuses of this privilege, the statute allows a district court to dismiss the case upon a finding that the action is "frivolous or malicious" or "fails to state a claim on which relief may be granted." § 1915(e)(2)(B)(i),(ii). A finding of frivolity can be made where the complaint "lacks an arguable basis either in law or fact." *Denton*, 504 U.S. at 31. Hence, under § 1915(e)(2)(B), a claim based on a meritless legal theory may be dismissed *sua sponte*. *Neitzke*, 490 U.S. at 327.

This Court is required to construe *pro se* complaints and petitions liberally. Such *pro se* complaints and petitions are held to a less stringent standard than those drafted by attorneys, *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978), and a federal district court is charged with liberally construing a complaint or petition filed by a *pro se* litigant to allow the development of a potentially meritorious case. *See Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980); *Cruz v. Beto*, 405 U.S. 319 (1972).

3

When a federal court is evaluating a *pro se* complaint or petition, the plaintiff's or petitioner's allegations are assumed to be true. *Fine v. City of New York*, 529 F.2d 70, 74 (2nd Cir. 1975). But a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), or construct the plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim currently cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990). Even under this less stringent standard, the Amended Complaint filed in this case is subject to summary dismissal.

## BACKGROUND

Plaintiff alleges that he filed three lawsuits against SCDC, its former director, Defendant Ozmint, "and other relevant employees," in Richland County Common Pleas Court, *i.e.* C/A Nos. 2007-CP-40-3742, 2009-CP-2441, and 2009-CP-40-02442. *See* ECF No. 14-1, p. 8. Essentially, Plaintiff's claims of constitutional violations center on his allegations that Defendants in the instant case conspired with each other to "intentional[ly] interfere, [and] infringe[] unjustifiabl[y] [on] Plaintiff's rights to access to Courts, to redress [an] SCDC employee's intentional tort of assault and battery," ECF No. 14-1, p. 6, during Plaintiff's state court lawsuits against SCDC. Plaintiff alleges that, during motions hearings in two of the cases in which Defendant Judge Kinard presided, on/about July 29, 2008 and February 12, 2009, Defendants Stewart, "Riley Pope," "DeLaney," and Boland[1]

---

[1]The name of these Defendants' law firm is "Riley Pope & Laney, LLC." *See* http://rplfirm.com/Home.aspx (last visited October 12, 2011). There is no individual member of the
(continued...)

4

"asserted a false statement of law, referring to the South Carolina Tort Claims Act, a State statutory law, under sub[]section 15-78-70(b), [which was] knowingly false, [*i.e.* that,] 'pursuant to the terms of the S.C. Tort Claims Act, employees of the SCDC may 'not' be sued individual[ly].'" ECF No. 14, p. 4-5. Plaintiff alleges that this "knowingly false assertion" constituted "tortious[] interfere[nce] with Plaintiff's mer[i]t[or]ious claim to amend [his complaint in his state court lawsuits to add] the said employee [who had] deliberately kicked the Lieber Correctional facility['s], Cafeteria Trayroom door against Plaintiff's left hand causing[] Plaintiff's finger[] tips to be amputated." ECF No. 14-1, p. 5. Plaintiff alleges that "[t]he presiding Court (Defendant Judge Kinard, Jr.) relied and was convinced of the assertion represented by said Defendants' Counsel Stewart, III, and ordered said Defendants' Counsel Stewart, III, to prepare a proposed order." Plaintiff alleges that, in the first case, on/about August 11, 2008, and in the second case, on/about March 16, 2009, "Judge Kinard . . . by signing it, conspired with said Defendants' Counsel Stewart, III, wilful[ly] participa[ted] [and] jointly engaged in concert with [Defendants] act[ing] under color of State law, to deprive, deny, unjustifiabl[y] interfere[], [and] infringe[] [on] Plaintiff's rights . . . under § 1983 and [the] 14th [Amendment]." ECF No. 14-1, p. 5-6. Plaintiff alleges that a similar motion to amend his complaint in his third lawsuit was also denied by Judge J. Michelle Childs, on/about January 14, 2010, when Defendant Stewart made the same false representation to the state court. Plaintiff alleges "Defendant

---

[1](...continued)
firm named "Riley Pope" or "LeRoy Free DeLaney." The firm currently includes the named Defendant Nicole H. Boland and formerly included the named Defendant Heath McAlvin Stewart. Attorney LeRoy Free Laney is a current member of the firm. Attorneys Theodore D. Riley and T. Lowndes Pope are current members of the firm. To the extent that Plaintiff intended to include Messrs. Laney, Riley, and Pope, and/or the law firm Riley Pope & Laney, LLC as Defendants in this case, but misidentified them by naming "Riley Pope" and "LeRoy Free DeLaney" among the Defendants, this Report and Recommendation applies to all of these individuals and to their law firm as if they had been properly identified by Plaintiff.

Riley Pope and LeRoy Free DeLaney . . . as Supervisors [] should have corrected Defendant Stewart, III['s] misconduct . . . by withdrawing the false assertion made before the courts," but that they "fail[ed] to act . . . [and] fail[ed] to withdraw from [the] conspiracy." ECF No. 14-1, p. 9-10. Plaintiff alleges that Defendant Boland "wilful[ly] participated in jointly conspir[ing] with Defendants . . . after Defendant Stewart, III [had] be[en] removed from the employment of Riley Pope & Laney, LLC, [and] continued to sustain, enforce and deprive, interfere, misrepresent[] [the] law, [and] unjustifiabl[y] infringe [on] Plaintiff's rights to redress his claims of assault and battery." ECF No. 14-1, p. 10.

In his Amended Complaint, Plaintiff specifically alleges as to Defendants Ozmint and Kinard, that:

> Defendant Jonathan E. Ozmint, during such aforesaid time herein referred to relevant to, w[as] the Commissioner of the South Carolina Department of Corrections, § 24-1-140, who w[as] authorized to prescribe[] reasonable rules and regulations to the employees and prisoners, and to hire outside private lawyers, through the SCDC General Counsel G.A. 01.07. 3-4023, on terms of contract relations, by signing agreement with the State Agency and the S.C. State Budget & Control Board, Insurance Division, to defend against any claims against the Department of Corrections, § 24-1-220, created by the State. . . . Defendant Judge John Ernest Kinard, Jr., is as amended a State Judicial Officer of the State of South Carolina, a State Actor, who, claims that he (Judge Kinard, Jr.,) paid careful consideration to said Defendants' Counsel[']s prepared proposed order, acted under color of State law, by wilful[ly] participat[ing] [and] jointly engag[ing] in concert with Defendants[] and Defendants' Counsel[], aided private contracted lawyers, by signing the fraudulent . . . misrepresent[ation] of law, [in the] proposed order, [and] conspiring to deny, deprive, infringe and interfere with [Plaintiff's] rights secure[d] by the Constitution, 42 U.S.C. § 1983 and 14th U.S.C.A.

ECF No. 14-1, p. 2. Essentially, Plaintiff asserts that he has amended his complaint in the instant case to include Defendant Ozmint because Ozmint allegedly hired and controlled the lawyers who defended SCDC against Plaintiff's lawsuits in state court, and conspired with them to violate Plaintiff's constitutional rights. *See* ECF No. 14-1, p. 13. Plaintiff, while acknowledging that Judge Kinard is

6

immune from actions under 42 U.S.C. § 1983 (ECF No. 14-1, p. 12), nevertheless names him as a Defendant in his Amended Complaint.

## DISCUSSION

Generally, a case can be originally filed in a federal district court if there is "federal question" jurisdiction under 28 U.S.C. § 1331 or "diversity of citizenship" under 28 U.S.C. § 1332.[2] Federal courts are courts of limited jurisdiction, "constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." *In re Bulldog Trucking, Inc.*, 147 F.3d 347, 352 (4th Cir. 1998). Since federal courts have limited subject matter jurisdiction, there is no presumption that the court has jurisdiction. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 399 (4th Cir. 1999) (citing *Lehigh Mining & Mfg. Co. v. Kelly*, 160 U.S. 337 (1895)). Accordingly, a federal court is required, *sua sponte*, to determine if a valid basis for its jurisdiction exists, "and to dismiss the action if no such ground appears." *Bulldog Trucking,* 147 F.3d at 352; *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). "[T]he facts providing the court jurisdiction must be affirmatively alleged in the complaint." *Pinkley,* 191 F.3d at 399 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178 (1936)). To this end, Federal Rule of Civil Procedure 8(a)(1) requires that the complaint provide "a short and plain statement of the grounds for the court's jurisdiction[.]"

---

[2]There is clearly no basis for a finding that this Court has diversity jurisdiction over this action. The diversity statute, 28 U.S.C. § 1332(a), requires complete diversity of parties and an amount in controversy in excess of seventy-five thousand dollars ($75,000.00). *See* 28 U.S.C. § 1332; *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 372-74 (1978). Complete diversity of parties in a case means that no party on one side may be a citizen of the same state as any party on the other side. *Owen*, 437 U.S. at 373-74. This Court does not have diversity jurisdiction in this case because Plaintiff and Defendants are all citizens and residents of South Carolina. *See* Complaint (ECF No. 1) and Amended Complaint (ECF No. 14).

If, however, the complaint does not contain "an affirmative pleading of a jurisdictional basis[,] a federal court may find that it has jurisdiction if the facts supporting jurisdiction have been clearly pleaded." *Pinkley, Inc.,* 191 F.3d at 399 (citing 2 *Moore's Federal Practice* § 8.03[3](3d ed. 1997)). Although the absence of subject matter jurisdiction may be raised at any time during the case, determining jurisdiction at the outset of the litigation is the most efficient procedure. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir. 1999). If the court, viewing the allegations in the light most favorable to the plaintiff, finds insufficient allegations in the pleadings, the court will lack subject matter jurisdiction. *Id.*

Plaintiff's Amended Complaint attempts to allege sufficient facts to establish a cause of action for violation of his constitutional rights under 42 U.S.C. § 1983, which would constitute "federal question" jurisdiction. In order to state a cause of action under 42 U.S.C. § 1983, a plaintiff must allege that: (1) individual defendant(s) deprived him of a federal right, and (2) did so under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980); *Hall v. Quillen*, 631 F.2d 1154, 1155-56 (4th Cir. 1980). The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails. *See McKnight v. Rees*, 88 F.3d 417(6th Cir. 1996). Purely private conduct such as that alleged in this case against Defendants Stewart, Pope, DeLaney, and Boland, no matter how wrongful, injurious, fraudulent, or discriminatory, is not actionable under 42 U.S.C. § 1983 or under the Fourteenth Amendment, the two most common provisions under which persons come into federal court to claim that others have violated their constitutional rights. *See Lugar v. Edmondson Oil Co.*,

457 U.S. 922, 936 (1983); *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721 (1961).[3] Because the United States Constitution regulates only the government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes "state action." *See, e.g., Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982). To qualify as state action, the conduct in question "must be caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible," and "the party charged with the [conduct] must be a person who may fairly be said to be a state actor." *Lugar*, 457 U.S. at 937; *see U. S. v. Int'l Brotherhood of Teamsters, Chauffeurs, Warehousemen Helpers of Am., AFL-CIO*, 941 F.2d 1292 (2d Cir.1991). Although a private individual or corporation can act under color of state law, his, her, or its actions must occur where the private individual or corporation is a willful participant in joint action with the State or with an agent of the State. *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980).

Plaintiff cannot maintain a civil rights claim against Defendants Stewart, Pope, DeLaney, and Boland because they have not acted under color of state law. "A lawyer representing a client is not, by virtue of being an officer of the court, a state actor 'under color of state law' within the meaning of § 1983." *Polk County v. Dodson*, 454 U.S. 312, 318 (1981). "Although lawyers are generally licensed by the States, 'they are not officials of government by virtue of being lawyers.'" *Id.* at 319 n.9 (quoting *In re Griffiths*, 413 U.S. 717, 729 (1973)). It is well settled that an attorney, whether retained, court-appointed, or a public defender, does not act under color of state law when performing

---

[3] *Burton* involved the Equal Protection Clause of the Fourteenth Amendment, not 42 U.S.C. § 1983. Federal courts have uniformly held that conduct which constitutes state action under the Fourteenth Amendment also constitutes action under color of state law, insofar as suits under 42 U.S.C. § 1983 are concerned. *West v. Atkins*, 487 U.S. 42, 48-49 (1988) (collecting cases).

traditional functions as counsel. *See Polk County v. Dodson*, 454 U.S. at 317-324 nn.8-16 (1981) (public defender); *Hall v. Quillen*, 631 F.2d at 1155-1156 & nn.2-3 (4th Cir. 1980) (court-appointed attorney); *Deas v. Potts*, 547 F.2d 800 (4th Cir. 1976) (private attorney).

It appears that Plaintiff asserts a claim against Defendant Ozmint in his official capacity for monetary damages. Ozmint is protected from suit brought pursuant to § 1983 by the Eleventh Amendment, which forbids a federal court from rendering a judgment against an unconsenting state in favor of a citizen of that state. *Edelman v. Jordan*, 415 U.S. 651, 663 (1974). The United States Supreme Court has found that a state, including state agencies, divisions, departments, and officials, is entitled to Eleventh Amendment immunity in the absence of consent to suit or Congressional action. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989). The State of South Carolina has not provided such consent (*see* S.C.Code Ann. § 15-78-20(e)); and Congress has not overridden the state's Eleventh Amendment immunity in § 1983 cases (*see Quern v. Jordan*, 440 U.S. 332, 334 (1979)).

Plaintiff also seeks to recover monetary damages from Defendant Ozmint, in his individual capacity, based on his alleged hiring and supervision of the lawyers who are also named as Defendants in the instant case. However, under § 1983, liability cannot be imposed vicariously against a supervisory official because the doctrine of *respondeat superior* is generally inapplicable to § 1983 suits. *See Monell*, 436 U.S. at 694; *Rizzo v. Goode*, 423 U.S. 362, 375 (1976); *Vinnedge v. Gibbs*, 550 F.2d 926, 928-29 (4th Cir. 1977). The plaintiff must establish three elements to hold a supervisor liable for a constitutional injury inflicted by a subordinate: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response

was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.). Here, Plaintiff has failed to allege this such that he fails to state a claim against Defendant Ozmint in his individual capacity.[4]

Plaintiff's Complaint makes no specific factual allegation that Defendant Ozmint personally hired the lawyers in Plaintiff's state court cases, only the conclusory allegation that Defendant Ozmint, as SCDC's Director at the time, had the authority to hire outside private counsel. The alleged constitutional violation itself appears to be based on Plaintiff's misunderstanding of the provisions of the South Carolina Tort Claims Act ("SCTCA") and the relevant case law concerning who may be named as a defendant and what types of claims may be actionable under the SCTCA. Moreover, Plaintiff does not allege any facts to show the existence of an affirmative causal link between Defendant Ozmint's action or inaction and Plaintiff's alleged constitutional injury, to show that Defendant Ozmint should be liable under § 1983.

Plaintiff is barred by the doctrine of absolute judicial immunity from bringing a claim seeking an award of monetary damages against Defendant Judge Kinard. The doctrine of absolute immunity for acts taken by a judge in connection with his or her judicial authority and responsibility is well established and widely recognized. *See Mireles v. Waco*, 502 U.S. 9, 11-12 (1991) (judges are immune from civil suit for actions taken in their judicial capacity, unless "taken in the complete absence of all jurisdiction."); *Siegert v. Gilley*, 500 U.S. 226 (1991) (immunity presents a threshold question which should be resolved before discovery is even allowed); *Burns v. Reed*, 500 U.S. 478

---

[4]Likewise, to the extent that Plaintiff's allegations against Defendants Pope and DeLaney assert that they "as Supervisors [] should have corrected Defendant Stewart, III['s] misconduct," ECF No. 14-1, p. 10, Plaintiff fails to state a claim against them under § 1983.

(1991) (safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct); *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985) (absolute immunity "is an immunity from suit rather than a mere defense to liability"); *Stump v. Sparkman*, 435 U.S. 349, 359 (1978) ("A judge is absolutely immune from liability for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors."); *Chu v. Griffith*, 771 F.2d 79, 81 (4th Cir. 1985) ("It has long been settled that a judge is absolutely immune from a claim for damages arising out of his judicial actions."). The reasons for the doctrine of absolute immunity for judges were outlined by the Fourth Circuit in *McCray v. Maryland*, 456 F.2d 1 (4th Cir. 1972):

> The absolute immunity from suit for alleged deprivation of rights enjoyed by judges is matchless in its protection of judicial power. It shields judges even against allegations of malice or corruption. . . . The rule is tolerated, not because corrupt or malicious judges should be immune from suit, but only because it is recognized that judicial officers in whom discretion is entrusted must be able to exercise discretion vigorously and effectively, without apprehension that they will be subjected to burdensome and vexatious litigation.

*McCray*, 456 F.2d at 3 (citations omitted), overruled on other grounds, *Pink v. Lester*, 52 F.3d 73, 77 (4th Cir. 1995). The alleged misconduct by Defendant Judge Kinard was in allegedly "aid[ing] private contracted lawyers, by signing the fraudulent and misrepresent[ational] . . . proposed order[s], conspiring to deny, deprive, infringe and interfere with rights secure[d] by the Constitution." Defendant Judge Kinard's actions were undertaken as part of his normal judicial functions as a state circuit court judge, while making rulings and issuing orders in cases assigned to him. Thus, Judge Kinard's alleged illegal actions were not taken in the clear absence of all jurisdiction and were performed as part of his normal judicial duties. Accordingly, Judge Kinard should be summarily dismissed from this case based on his absolute judicial immunity.

Plaintiff did not plead sufficient facts in his original Complaint to pursue a civil rights action for conspiracy under §§ 1985 and 1986 against Defendants and consequently alleged in "Plaintiff's Notice of Motion and Motion for Leave to Amend Complaint" that, in his Amended Complaint, "Plaintiff proposed to delete a claim under 42 U.S.C. § 1985 and 1986, because the Plaintiff does not have any evidence of 'racial discrimination.'" ECF No. 14, p. 3. In fact, Plaintiff's Amended Complaint contains no allegations that Defendants conspired to violate §§ 1985 and 1986. Plaintiff's Amended Complaint does, however, allege that Defendants conspired to violate § 1983. Under *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This requires a "plausible suggestion of conspiracy," *Twombly*, 550 U.S. at 565, and Plaintiff's Amended Complaint must plead facts that would "reasonably lead to the inference that [Defendants] positively or tacitly came to a mutual understanding to try to accomplish a common and unlawful plan." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). The Amended Complaint makes only the bare, conclusory allegation that Defendants conspired to violate Plaintiff's civil rights by agreeing to misrepresent or misinterpret the language of the SCTCA and thereby deny Plaintiff's motions to add an individual SCDC employee as a defendant in Plaintiff's state court lawsuits. In essence, Plaintiff's conspiracy theory is that Defendants, knowing that the SCTCA does not preclude lawsuits against individual state employees, conspired to prevent Plaintiff from suing an individual SCDC employee. However, this Court takes judicial notice of the fact that the provisions of the SCTCA, which Plaintiff alleges were falsified and misrepresented by Defendants, mirror what Plaintiff alleges Defendants represented them to be in Plaintiff's state court proceedings. "When a plaintiff claims an employee of a state agency acted negligently in the performance of his job, the [SCTCA] requires a plaintiff to

sue the agency for which an employee works, rather than suing the employee directly." *Faile v. South Carolina Dep't of Juvenile Justice*, 566 S.E.2d 536, 539 n.1 (SC 2002) (citing S.C. Code Ann. § 15-78-70(c)). When a plaintiff brings such a suit alleging injury caused by the negligence of a state employee acting within the scope of his or her employment, "[i]n the event that the employee is individually named, the agency or political subdivision for which the employee was acting must be substituted as the party defendant." S.C. Code. Ann. § 15-78-70(c).

It appears that Plaintiff, who was proceeding *pro se* in his state court tort claims cases, misunderstood the South Carolina statutory and case law and court rules which govern a litigant's limited right to bring a damages claim against either a state agency or against an individual employee of a state agency. The Amended Complaint submitted in this case fails to establish a viable conspiracy claim against any of the Defendants, even if it is assumed that the denials of Plaintiff's motions in his state court cases somehow implicated constitutional considerations, which they clearly do not.

Finally, this Court's consideration of Plaintiff's Complaint is additionally barred by the *Rooker-Feldman* doctrine. Pursuant to the *Rooker-Feldman* doctrine, lower federal courts may not review state-court decisions, except in habeas corpus actions. *Shooting Point, L.L.C. v. Cumming*, 368 F.3d 379, 383 (4th Cir. 2004); *Jordahl v. Democratic Party*, 122 F.3d 192, 199 (4th Cir. 1997). This includes decisions made by a state's highest court as well as decisions made by lower state courts. *Shooting Point*, 368 F.3d at 379 (citing *Jordahl*, 122 F.3d at 199). The *Rooker-Feldman* jurisdictional bar "extends not only to issues actually decided by a state court but also to those that are inextricably intertwined with questions ruled upon by a state court." *Shooting Point*, 368 F.3d at 383 (internal quotation marks omitted). A federal claim is "inextricably intertwined" with a state court decision "if in order to grant the federal plaintiff the relief sought, the federal court must determine that the state

14

court judgment was erroneously entered or must take action that would render the judgment ineffectual. . . ." *Jordahl*, 122 F.3d at 202.

Plaintiff's claims are barred by the *Rooker-Feldman* doctrine in the instant case, because they are "inextricably intertwined" with questions ruled upon by a state court. Thus, any decision on the merits of Plaintiff's claims would require this Court to find that decisions issued by the state court were improperly entered. *See Dye v. Hatfield, No.* Civ.1:03CV01077, 2004 WL 3266029 at *5 (M.D.N.C. Aug. 26, 2004) (finding that plaintiffs' civil rights claims based upon an alleged conspiracy among "virtually everyone involved with the North Carolina state court system" were barred by the *Rooker-Feldman* doctrine because a ruling in favor of plaintiffs would "necessarily require the court to find that a state court wrongly decided certain issues" or "improperly entered orders and judgments" against the plaintiffs); *Newman v. Alexander*, 2003 WL 1746320 at *4, 2003 (W.D. Va. 2003) (finding that *Rooker-Feldman* doctrine barred the court from hearing claims made by a plaintiff seeking to attack her criminal conviction by accusing judicial officers of conspiring against her because such claims seek a determination that state court decisions were wrong). The *Rooker-Feldman* doctrine prevents Plaintiff "from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Brown & Root. Inc. v. Breckenridge*, 211 F.3d 194, 198 (4th Cir. 2000) (quoting *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)).

## RECOMMENDATION

Accordingly, it is recommended that the Amended Complaint in this case be summarily

dismissed, *without prejudice* and without issuance and service of process. Plaintiff's attention is directed to the important notice on the next page.

                                                Joseph R. McCrorey
                                                United States Magistrate Judge

October 18, 2011
Columbia, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).